**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Crim. No. 15-0348 (MLC) |
| - vs - | |
| GIDEON VAISMAN, | |
| Defendant. | |

**DEFENDANT GIDEON VAISMAN'S
<u>REPLY BRIEF IN SUPPORT OF PRETRIAL MOTIONS</u>**

Mark A. Berman, Esq.
Jeremy B. Stein, Esq.
**HARTMANN DOHERTY ROSA
BERMAN & BULBULIA, LLC**
65 Route 4 East
River Edge, NJ 07661
mberman@hdrbb.com

*Attorneys for Defendant
Gideon Vaisman*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................. ii

ARGUMENT .................................................................................................................1

    I.    THE COURT MUST DISMISS THE MAIL AND WIRE FRAUD COUNTS BECAUSE THEY FAIL TO ALLEGE A DEPRIVATION OF PROPERTY. ...........................................................................................1

    II.    THE COURT MUST DISMISS THE MAIL AND WIRE FRAUD COUNTS BECAUSE THEY FAIL TO ALLEGE A SCHEME OR ARTIFICE TO DEFRAUD. .......................................................................5

    III.    THE COURT MUST DISMISS THE TAX COUNTS. .........................................6

    IV.    MULTIPLE COUNTS OF THE INDICTMENT ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS...................................................11

    V.    THE COURT SHOULD HOLD AN EVIDENTIARY HEARING ON DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED BY THE GOVERNMENT.........................................................................................15

    VI.    THE COURT SHOULD GRANT A BILL OF PARTICULARS TO CLARIFY CERTAIN VAGUE ALLEGATIONS IN THE INDICTMENT ........16

CONCLUSION.............................................................................................................18

# TABLE OF AUTHORITIES

## CASES

*Autoforge, Inc. v. Am. Axle & Mfg., Inc.*,
   No. 02-01265, 2008 WL 65603 (W.D. Pa. Jan. 4, 2008) ........................................................ 3

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972)................................................................................................................. 9

*Hamatie v. Louisville Ladder, Inc.*,
   No. 6:06-CV-817-ORL-18, 2007 WL 7626033 (M.D. Fla. Oct. 24, 2007) .............................. 3

*Johnson v. United States*,
   135 S. Ct. 2551 (2015)........................................................................................................... 10

*Knife Rights, Inc. v. Vance*,
   802 F.3d 377 (2d Cir. 2015) .................................................................................................... 9

*Kolender v. Lawson*,
   461 U.S. 352 (1983)............................................................................................................... 10

*Mancusi v. DeForte*,
   392 U.S. 364 (1968)............................................................................................................... 15

*New York v. Burger*,
   482 U.S. 691 (1987)............................................................................................................... 15

*United States v. Atiyeh*,
   402 F.3d 354 (3d Cir. 2005) .................................................................................................. 13

*United States v. Binday*,
   804 F.3d 558 (2d Cir. 2015) ............................................................................................... 3, 5

*United States v. Boyer*,
   694 F.2d 58 (3d Cir. 1982) ...................................................................................................... 6

*United States v. Coyle*,
   63 F.3d 1239 (3d Cir. 1995) .................................................................................................... 5

*United States v. Davidoff*,
   845 F.2d 1151 (2d Cir. 1988) ................................................................................................ 17

*United States v. Garcia*,
   413 F.3d 201 (2d Cir. 2005) .................................................................................................... 2

*United States v. Gonzalez*,
   412 F.3d 1102 (9th Cir. 2005) ............................................................................................... 15

*United States v. Hoffecker*,
    530 F.3d 137 (3d Cir. 2008) .................................................................. 3

*United States v. Lloyd*,
    807 F.3d 1128 (9th Cir. 2015) .............................................................. 2

*United States v. Meador*,
    138 F.3d 986 (5th Cir. 1998) ................................................................ 12

*United States v. Nagle*,
    803 F.3d 167 (3d Cir. 2015) ................................................................. 15

*United States v. O'Neill*,
    952 F. Supp. 831 (D.D.C. 1996) ..................................................... 12, 14

*United States v. Sadler*,
    750 F.3d 585 (6th Cir. 2014) ................................................................ 4

*United States v. Titterington*,
    354 F. Supp. 2d 778 (W.D. Tenn. 2005) ............................................. 14

*United States v. Trainor*,
    376 F.3d 1325 (11th Cir. 2004) ........................................................... 12

*United States v. Wilson*,
    249 F.3d 366 (5th Cir. 2001) ............................................................... 12

*United States v. Wilson*,
    322 F.3d 353 (5th Cir. 2001) ............................................................... 12

## STATUTES & RULES

18 U.S.C. § 3292 ................................................................... 11, 12, 13, 14

26 U.S.C. § 7206 ........................................................................... 6, 7, 8

Fed. R. Evid. 401 .............................................................................. 2

Fed. R. Evid. 403 .............................................................................. 2

Fed. R. Evid. 701 .............................................................................. 2

Fed. R. Evid. 702 .............................................................................. 2

## <u>ARGUMENT</u>

I.    **THE COURT MUST DISMISS THE MAIL AND WIRE FRAUD COUNTS BECAUSE THEY FAIL TO ALLEGE A DEPRIVATION OF PROPERTY.**

Defendant Gideon Vaisman has moved to dismiss Count One of the Indictment, which charges conspiracy to defraud, and Counts Two to Fourteen, which charge substantive fraud offenses, in violation of the mail fraud and wire fraud statutes.  The government has opposed the motion to dismiss largely on the basis that it intends to introduce evidence at trial that repair stations would not have accepted parts for repair, and that purchasers would not have purchased the repaired parts approved for return to service by an FAA certified repair station, if they knew that certifications accompanying the part were "false."  *See* Gov't Br. at 16-17.  The government also argues that one purchaser will testify at trial "that his/her company experienced more than one in-flight engine shutdown relating to blades and vanes it had purchased from Tara Aviation."  *Id.* at 17.  Such inadmissible testimony, if admitted, would not be sufficient to save the government's Indictment as a matter of law, and the government otherwise fails to distinguish the caselaw cited in Defendant Vaisman's opening brief that warrants dismissal of the fraud counts.

*First*, the Discovery Order entered by the Court on August 4, 2015, required the government – within 10 days of the date of the Order – to provide defense counsel with summaries of expert witnesses' testimony and all reports of examinations and tests required to be produced under Rule 16.  The government did not and has not produced any such expert summaries.  In particular, the government has not produced any expert evidence to corroborate its assertion that any Tara Aviation part caused any "in-flight engine shutdown."[1]  That assertion cannot be

---

[1] The government also has not disclosed any expert summary opining that any part at issue had, in fact, been exposed to severe or excessive stress or heat and, in fact, the government does not dispute that it will be unable to prove at trial that any specific part had been exposed to severe or excessive stress or heat, *i.e.*, that any statement for which Vaisman is responsible was actually false.

established through lay testimony and any expert conclusion purporting to make a connection between a Tara Aviation part and an engine shutdown would have had to have been disclosed by the government long ago.  Therefore, there will not be "expert" evidence at trial from some company's undisclosed company representative about some undisclosed engine event.

In a February 17, 2017 letter, the government has represented to counsel that it intends to call a company representative to testify at trial that the reason the company ceased buying parts from Tara Aviation was because, in its opinion, a Tara Aviation part caused an in-flight engine shutdown.  Such lay opinion testimony is irrelevant under Federal Rule of Evidence 401, inadmissible under Federal Rule of Evidence 701, and otherwise unfairly prejudicial under Federal Rule of Evidence 403.  Moreover, the underlying opinion – that an in-flight engine shutdown event was caused by a Tara Aviation part – can only be established by expert testimony, which the government concedes it does not have. *See* Fed. R. Evid. 701 ("If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."); *United States v. Lloyd*, 807 F.3d 1128, 1155 (9th Cir. 2015) (holding that district court erred by admitting lay testimony from special agent, who had not been disclosed as an expert, that relied on speculation and hearsay); *United States v. Garcia*, 413 F.3d 201, 212 (2d Cir. 2005) (holding that foundation requirements of lay opinion witness rule do not permit a witness to testify to an opinion if the reasoning process depended, in whole or in part, on specialized training and experience and was not limited to the witness's personal perceptions but drew on the total information developed by all who participated in the investigation). Indeed, it would be unfairly

prejudicial and inflammatory for the government to introduce to a jury the possibility that a jet engine shut down in flight due to a Tara Aviation part – a fact the government cannot prove and does not intend to prove – through a lay witness. *See Autoforge, Inc. v. Am. Axle & Mfg., Inc.*, No. 02-01265, 2008 WL 65603, at *11 (W.D. Pa. Jan. 4, 2008) (concluding the probative value of lay opinion testimony from the plaintiff's president was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and the potential to mislead the jury, because the witness's testimony relied on inadmissible underlying facts and a previously excluded expert report); *Hamatie v. Louisville Ladder, Inc.*, No. 6:06-CV-817-ORL-18, 2007 WL 7626033, at *2 (M.D. Fla. Oct. 24, 2007) (precluding plaintiff from introducing non-disclosed expert's opinion regarding safety procedures through the testimony of another witness); *cf. United States v. Hoffecker*, 530 F.3d 137, 171 (3d Cir. 2008) (affirming introduction of lay witness opinion testimony that "was not based on specialized knowledge" where witness had "first-hand knowledge and observation" of the underlying facts upon which the opinion was premised). Therefore, the government's assertion that such evidence will be introduced at trial cannot be relied upon to defeat Defendant Vaisman's motion to dismiss.

*Second*, even if the government were permitted to introduce evidence at trial from one or more company representatives that a company would not have purchased part "x" if the company had known "y" – which also is objectionable from an evidentiary perspective – such evidence is not sufficient to sustain the fraud allegations in the Indictment. *See United States v. Binday*, 804 F.3d 558, 570 (2d Cir. 2015) ("It is not sufficient ... to show merely that the victim would not have entered into a discretionary economic transaction but for the defendant's misrepresentations."). The government does not dispute that, as alleged in the Indictment, the purported victims of the charged fraudulent conduct received vanes and blades that had been properly inspected, repaired

if needed, and certified as approved for return to service by an FAA-certified repair station.  And, the government – which does not dispute that it will not be able to prove that any specific part had been exposed to severe or excessive stress or heat, or was improperly repaired – does not explain how the purported victims were deprived of a property right; asserting after the fact that they would not have entered into the transaction is not sufficient. *See United States v. Sadler*, 750 F.3d 585, 590-91 (6th Cir. 2014) (reversing fraud conviction and rejecting government argument that defendant's "lies convinced the distributors to sell controlled substances that they would not have sold had they known the truth," even though one distributor's representative testified she would have been "concern[ed]" had she known more about defendant's operation, because the "statute is 'limited in scope to the protection of property rights,' and the ethereal right to accurate information doesn't fit that description.").

The government attempts to distinguish *Sadler* on the basis that, here, the purchasers of Scrapped Parts did not get what they had bargained for because the goods lacked "true certifications and trace paperwork."  That, however, simply is not the case even as alleged in the Indictment. The government itself alleges that the purchasers received parts that had been inspected and repaired if needed by FAA-certified repairs stations, who were legally prohibited from relying on any statement they may have received from any unregulated parts broker, and who certified that the repaired parts were airworthy.  That is, it is undisputed that the purchasers received overhauled parts certified by an FAA-certified repair station; that the purchasers might now claim that they would not have entered into the transactions is not sufficient to state an offense under the mail/wire fraud statutes.  There is no distinction from *Sadler* or any other case discussed in the government's opposition brief – the purchasers here obtained parts the government agrees were certified as airworthy and, hence, were not deprived of money or property under the mail/wire

- 4 -

fraud statutes. *See Binday*, 804 F.3d at 570 ("Thus, we have repeatedly rejected application of the mail and wire fraud statutes where the purported victim received the full economic benefit of its bargain.").

Simply stated, the government's opposition does not rebut the legal arguments raised in Defendant Vaisman's initial motion brief regarding the Indictment's failure to plea a deprivation of property subsumed within the mail/wire fraud statutes. Therefore, those counts must be dismissed.

## II.   THE COURT MUST DISMISS THE MAIL AND WIRE FRAUD COUNTS BECAUSE THEY FAIL TO ALLEGE A SCHEME OR ARTIFICE TO DEFRAUD.

Defendant Vaisman also has moved to dismiss the mail and wire fraud counts for failing to allege the requisite specific intent or a scheme involving any actually false statement. In opposition, the government fails to point to allegations in the Indictment that allege a "specific intent to defraud," as required. *United States v. Coyle*, 63 F.3d 1239, 1243 (3d Cir. 1995). Rather, it suggests that Vaisman's statements "were at least reckless and could not have been made in good faith," Gov't Br. at 19, but that is not what is alleged in the Indictment, which does not use the term "recklessly" even once. At best, the Indictment alleges that Vaisman did not know whether his representation was true or false, which cannot support the imposition of criminal liability. *See* Vaisman Br. at 16-17. Because the Indictment does not allege that Vaisman made any false statement knowing it was false, or with reckless disregard for the truth, Counts One through Fifteen must be dismissed.

Moreover, the government does not even attempt to dispute that it will be unable to prove at trial that any part at issue actually had been subjected to excessive heat or stress, which are terms undefined by the extensive FAA regulations. Again, the government has not disclosed any expert summary reaching that conclusion. To the contrary, the Indictment alleges that all of the parts at

- 5 -

issue that were sold to customers were, in fact, inspected, repaired, and then certified as approved for return to service by a FAA-certified repair station. Therefore, they could not have been subjected to "excessive" or "severe" stress or heat -- if they had then they would not have passed the overhaul tests – and the government has not alleged any actually false statements.  Regardless, the government does dispute that it not have expert or other evidence that any specific part had been exposed to severe or excessive stress or heat.

The government's opposition does not dispute that the Third Circuit has never held that proof of even recklessness is sufficient in the absence of proof of actual falsity.  *See* Vaisman Br. at 21-23 (*discussing, inter alia*, *United States v. Boyer*, 694 F.2d 58, 59-60 (3d Cir. 1982)).  Here, all of the allegedly false and fraudulent representations alleged in Counts One through Fifteen are belied by the Indictment's own allegation that the parts at issue were, in fact, salvageable parts, inspected, repaired and approved for return to service by FAA-certified repair stations.  The parts were all airworthy.  Moreover, the government's theory of fraud – that making a statement without knowing whether it is true or not – fails to satisfy even the (uncharged) recklessness *mens rea* standard in the absence of an allegation (and, ultimately, proof beyond a reasonable doubt) that the statement at issue was, in fact, false.  Therefore, Counts One through Fifteen must be dismissed as a matter of law.

## III.   <u>THE COURT MUST DISMISS THE TAX COUNTS.</u>

Defendant Vaisman has moved to dismiss the tax counts charging him with filing false individual and corporate tax returns, in violation of 26 U.S.C. § 7206(1), on the basis that the Indictment fails to allege that he controlled Tara Aviation for the purpose of/with the intent of evading taxes.  The government opposes the motion on the grounds that intent to evade is not an element of a violation of Section 7206(1).  The government might be right in other circumstances

but, here, it is – as a matter of law – required to charge (and prove) intent to evade because, absent an intent to evade, the Indictment fails to allege the making of a false statement, which is an element of a Section 7206(1) offense.

The Indictment charges that Vaisman failed to report Tara Aviation's income on Tara Technology's and Vaisman's tax returns, and also that Vaisman was required to report Tara Aviation's income because Tara Aviation and Tara Technology were both under Vaisman's common control.   Under the tax law, however, common control is not sufficient in and of itself to impute income from one entity to another.  Income is imputable only if common control is exercised for the purpose of evading taxes.  *See* Def. Br. at 23-26.  Therefore, failure to report entity B's income on entity A's tax returns is only false if the entities are under common control *and* that control was exercised with the intent to evade taxes.  *Id.*

The government opposition largely fails to grapple with this reality.  Its only response in opposition to this argument (*see* Gov't Br. at 22-23) is that the tax case Defendant has relied upon arose in the civil context, and did not involve a charge under Section 7206(1).  That, however, is exactly Defendant's point: Here, it is tax law (which often is explicated in the context of civil enforcement actions) that determines if a statement on a tax return is true or false for purposes of Section 7206(1); there is no separate criminal statute that defines these concepts for purposes of federal criminal prosecutions.  It is true that prosecutions under Section 7206(1) can involve simply false factual statements, such as claiming two dependents when the taxpayer only has one, or under-reporting income as X when income was really Y.  Here, though, the false statement the government focuses on – Vaisman's failure to report income from Tara Aviation – is not false in the simple factual sense; it is false only if *the tax law deems the statement false* based upon a certain test, specifically, if (a) there was common control, and (b) the common control was used

- 7 -

for the purpose of evading taxes.  The government cannot obtain a conviction in this case under Section 7206(1) by proving common control alone; rather, it must also prove (and charge) that the common control was used by Vaisman with the intent to evade taxes.  The government does not dispute this; it offers no response to this argument at all.

        The government also offers no response to the second ground for dismissing the tax charges against Defendant Vaisman, specifically, that the government's application of Section 7206(1) depends entirely on the definition of "alter ego" – if Tara Aviation were an "alter ego" of Tara Technology, then Vaisman had an obligation to report Tara Aviation's income on Tara Technology's and Vaisman's tax returns.  What constitutes an "alter ego" for purposes of the tax law, however, is too vague to support a criminal prosecution.  In contrast to many tax terms that are defined (*e.g.*, "employee," "wages," etc.), there is no statutory definition of the term "alter ego," and the sparse civil enforcement case law depends upon a "totality of the circumstances" test that fails to give sufficient warning to one potentially charged with criminal wrongdoing.[2]  That makes the government's application of Section 7206(1), in this case, hopelessly vague.  How could Vaisman know whether Tara Aviation was an alter ego of Tara Technology without, for instance, a prior ruling by the IRS that, under the totality of the circumstances, the companies were deemed to be alter egos?  There is no such prior determination that Tara Aviation and Tara Technologies were alter egos and, hence, no violation by Vaisman of any such classification of the companies. The government offers no response to this argument.

        Instead, the government tries to substitute the term "one company" for the term "alter ego."  *See* Gov't Br. at 25 ("The evidence will also demonstrate that as stated in the Indictment

---

[2] Counsel has been unable to find a single reported criminal case in which the government premised a Section 7206(1) charge upon an allegation that corporate entities were alter egos.

Tara Aviation and Tara Technology were one company.").  The government cannot amend the Indictment in its opposition brief, however, and – regardless – the law does not define standards for what constitutes "one company," which is not a term of art.  The government also lists two factors (Gov't Br. at 25) that it claims point to Tara Aviation and Tara Technology's being one company – that Vaisman maintained Tara Aviation inventory at Tara Technology and caused Tara Technology employees to work on Tara Aviation matters.  The government, however, does not cite any case for the proposition that those two factors are sufficient to find that two companies are really one company for tax law purposes and, more importantly, the government does not explain how a defendant would know that those two factors are determinative in the criminal context, when the tax law sets out a "totality of the circumstances" test, which is case-specific.

Similarly, the government offers no response to Defendant's argument that the Indictment does not sufficiently allege "willfulness."  The Indictment fails to charge that Vaisman knew he had a duty to report Tara Aviation's income on Tara Technology's and Vaisman's tax returns.  As discussed, Vaisman could only know that he had such a duty if it were, in fact, clear that such a duty existed. For purposes of a criminal prosecution, a defendant cannot be made to guess at the legal standards with which he is obligated to comply, and the void-for-vagueness doctrine is predicated on the notion that a law must give a person of ordinary intelligence an opportunity to know what is prohibited so that he or she may act accordingly. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) ("Vague laws may trap the innocent by not providing fair warning."); *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 383 (2d Cir. 2015) ("To ensure that persons are not denied liberty without due process, the law requires that criminal offenses be defined 'with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement'" (*quoting Kolender v. Lawson*, 461

U.S. 352, 357 (1983)). This risk is particularly acute where imposition of criminal liability depends upon the application of an uncertain and malleable legal standard to determine whether alleged conduct qualifies for criminal sanction. *See Johnson v. United States*, 135 S. Ct. 2551, 2557–58 (2015) (holding that "two features" of definition of "violent felony" in Armed Career Criminal Acts "conspire[d] to make it unconstitutionally vague," (1) "uncertainty about how to estimate the risk posed by a crime" and (2) "uncertainty about how much risk it takes for a crime to qualify as a violent felony," recognizing that the residual clause provided "no reliable way to choose between ... competing accounts" of what risks of physical injury the ordinary case of a crime would involve, or basis for courts to estimate risk based on a judicially imagined set of facts and in light of the residual clause's enumerated offenses—burglary, arson, extortion, and crimes involving explosives—which were "far from clear in respect to the degree of risk each poses," resulting in "more unpredictability and arbitrariness than the Due Process Clause tolerates").  Because the tax reporting duty depends on Tara Aviation's being an alter ego of Tara Technology, which can only be determined on a case-by-case totality of the circumstances basis, the government has not charged (and cannot prove) that Vaisman, or anyone else, knew that the companies were alter egos for tax purposes, absent a prior determination by the IRS or a court (of which there was none).

Finally, the government incorrectly states (Gov't Br. at 25) that Defendant did not address the Indictment's allegations regarding use of Tara Aviation funds for personal purchases.  Defendant addressed this argument in his opening brief (*see* Def. Br. at 25 note 4): The Indictment's allegations regarding Tara Aviation funds used for personal purposes is predicated on the same allegation of alter ego, *i.e.*, that because Vaisman owned Tara Technology, and Tara Aviation was an alter ego of Tara Technology, Vaisman therefore also owned Tara Aviation.  Thus, for the same reason the tax charges with respect to failure to report net income

- 10 -

must be dismissed as vague and/or for failure to allege willfulness, because of the indefinite nature of what constitutes an "alter ego," the charge that Vaisman failed to report Tara Aviation funds allegedly used for personal purposes must be dismissed as well.

## IV.  MULTIPLE COUNTS OF THE INDICTMENT ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.

Defendant has moved to dismiss multiple counts of the Indictment on statute of limitations grounds. Prior to the return of the Indictment on July 10, 2015, the parties entered into seven successive tolling agreements, which tolled the statute of limitations for 457 days, from February 11, 2014 through May 13, 2015.  Thus, Defendant has argued that only fraud offenses committed within 5 years plus 457 days prior to July 10, 2015 –- that is, on or after April 9, 2009 -– are within the statute of limitations, and only tax offenses committed on or after April 9, 2008, are within the six-year statute of limitation applicable to the tax offenses. The government's opposition claims that the statutes of limitations in this case were further tolled by several Mutual Legal Assistance Treaty ("MLAT") requests, as a result of which "the period from April 28, 2010 through November 12, 2013 is excludable pursuant to 18 U.S.C. § 3292." *See* Gov't Br. at 29-30.

If "evidence of an offense is in a foreign country," the government may make an *ex parte* application to a district court before which a grand jury is impaneled to suspend the running of the statute of limitations.  18 U.S.C. § 3292(a)(1).  The government must establish "that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country." *Id.*  A district court must rule on the government's request within 30 days.  18 U.S.C. § 3292(a)(2).  If granted, the suspension period begins on the date the official request is made and ends when the foreign government takes its final action on the request.  18 U.S.C. § 3292(b).  Final action on the request is deemed to have occurred when the foreign government indicates that it has taken a final

action on the request and communicates that belief to the United States government.  *United States v. Meador*, 138 F.3d 986, 992 (5th Cir. 1998).

There are outer limitations on the length of tolling periods under Section 3292.  Subsection (c)(1) provides that "[t]he total of all periods of suspension under this section with respect to an offense ... shall not exceed three years."  And, if the foreign government takes final action "before the statute of limitations would otherwise expire," subsection (c)(2) limits the period of suspension to six months.  Finally, Section 3292 is offense specific; that is, an application under Section 3292 does not toll every statute of limitations but, rather, only those offense to which the requested evidence relates.  *United States v. O'Neill*, 952 F. Supp. 831, 832-33 & n.2 (D.D.C. 1996) ("The United States could not reasonably request foreign evidence related to tax violations to toll the statute of limitations regarding conspiracy to import a controlled substance under Title 21, U.S. Code.").

A criminal defendant has a right to challenge the sufficiency of the government's applications under Section 3292. *See, e.g.*, *United States v. Wilson*, 249 F.3d 366, 372–73 (5th Cir. 2001) (vacating order denying motion to dismiss because defendant was entitled to hearing on fact issue as to adequacy of government's application to support tolling of five-year limitation period); *United States v. Wilson*, 322 F.3d 353, 372 (5th Cir. 2001) (reversing conviction where district court erroneously ruled that government had carried its burden of proving that tolling of statute of limitations was warranted under 18 U.S.C. § 3292); *United States v. Trainor*, 376 F.3d 1325 (11th Cir. 2004) (holding that brief summary in Section 3292 application asserting that evidence was in Switzerland did not satisfy the government's preponderance burden, noting again the absence of any verification or affidavit). In this case, the government has not produced those applications, so presently it is impossible for counsel (or this Court) to determine whether the government

- 12 -

complied with the requirements of Section 3292.  *See, e.g.*, *United States v. Atiyeh*, 402 F.3d 354, 363 (3d Cir. 2005) (holding that district court erred in denying defendant's motion to dismiss indictment on statute of limitations grounds where government already was in possession of evidence requested from foreign country at the time the government filed a Section 3292 tolling application).[3]  Similarly, the government appears not to have produced all of its correspondence with all of the foreign jurisdictions, which is necessary – among other things – to challenge the government's assertions as to when "final action" was taken.[4]

For example, the government asserts that a first request was made to Guernsey on April 28, 2010, and that final action by Guernsey on a separate request (submitted on May 24, 2012) was received on April 12, 2013, so that entire period is tolled.  The government has not provided any documents to substantiate these time frames.  Putting to one side other possible gaps between the various MLAT requests, if the Court were to deem the relevant "final action" for tolling purposes to have occurred on October 12, 2012, when France responded to the government's February 8, 2012 request, then at least Counts 3-8 would be time barred under Section 3292(c)(2), which limits the tolling period to six months if the foreign government takes final action "before the statute of limitations would otherwise expire."[5] Absent production by the government of its

---

[3] The government has taken defense counsel's request for these materials under advisement.

[4] As just one example, the government argues in its brief that "France took final action on the request on or about October 30, 2012." Gov't Br. at 30.  In fact, the U.S. Department of Justice transmitted France's response to the U.S. Attorney's Office in New Jersey on October 30, 2012. The transmittal letter from France is dated October 12, 2012, eighteen days earlier.

[5] The 5-year statute of limitations expiration date for the substantive acts charged in Counts 3-8, plus 6 months under Section 3292(c)(2), would be: Count 3 = 8/28/13, Count 4 = 9/25/13, Count 5 = 10/22/13, Count 6 = 10/30/13, Count 7 = 11/12/13, and Count 8 = 12/26/13.  These expiration dates all predate the tolling agreements entered into by Defendant Vaisman as well as, of course, the filing of the Indictment. Count 11 (alleging an act on 10/16/08) would likely be barred as well, and other counts would be time barred, too, if the six-month tolling period is required to run concurrently with any other tolling period.

correspondence with the foreign governments, it is impossible to tell whether the government's assertions regarding tolling periods is accurate.

Finally, the responses from the foreign governments produced by the U.S. Attorney's Office appear to be limited to materials relevant to the tax offenses charged in the Indictment (mostly bank records), but not to the FAA fraud counts.  Therefore, even if the government's Section 3292 applications are determined to have been sufficient to toll the statutes of limitations for the tax counts, they were not sufficient to toll the different (and shorter) statute of limitations applicable to the fraud counts in the Indictment. *See O'Neill*, 952 F. Supp. at 832-33 (holding that request for evidence of offenses from foreign government does not suspend statute of limitations for every possible offense, but only for those offenses that are both under investigation by a grand jury and for which foreign evidence has been officially requested).

For these reasons, the Court should order the government to disclose all of its Section 3292 applications and correspondence, so defense counsel (and this Court) can determine independently whether the government's applications satisfied Section 3292.  To that end, the Court should conduct an evidentiary hearing to adjudicate disputed facts related to the tolling issue. *See, e.g.*, *United States v. Titterington*, 354 F. Supp. 2d 778, 789 (W.D. Tenn. 2005) ("A motion to compel is currently pending in this case, wherein Defendants seek to obtain evidence to establish that the government did not meet the requirements of § 3292. The Court finds that a hearing as to whether the government complied with the requirements of § 3292 is appropriate based on Defendants' arguments.").

## V.   THE COURT SHOULD HOLD AN EVIDENTIARY HEARING ON DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED BY THE GOVERNMENT.

Defendant Vaisman has also moved to suppress evidence seized by the government.[6]  The government's opposition relies extensively on a recitation of factual details regarding Special Agent Richard McGrade's supervision of the government's informant in this case, including details that are absent from McGrade's affidavits. *See, e.g.,* Gov't Br. at 37 ("To the contrary, SA McGrade told the witnesses not to access or attempt to access any document at Tara Technology that he did not have access to as part of his daily work."). The government's unsworn representations in its opposition brief cannot fill in the information missing from the FAA's own activity log or SA McGrade's affidavits.

The government also argues that Defendant's motion is premised upon the assertion that repair stations "cannot *solely* rely on historical or trace paperwork" (emphasis added) and, therefore, SA McGrade's statement in his affidavit – that "FAA repair stations use historical or trace paperwork ..." – is false.  That, however, is not Defendant's argument.  Rather, Defendant argued in his motion brief that FAA Repair Stations cannot use the paperwork, at all, to determine

---

[6] The government erroneously argues that Vaisman does not have standing to challenge the search of his office. *See Mancusi v. DeForte*, 392 U.S. 364, 368–69 (1968) (holding that union official had personal Fourth Amendment standing to object to alleged unreasonable search and seizure of union records from office shared by official with other union officials).  Indeed, the entire premise of the government's case is that Vaisman and the two entities were alter egos.  Therefore, it cannot be seriously disputed that Vaisman had a legitimate expectation of privacy in his own corporate records and a personal connection to the corporate offices where he was the boss. *See New York v. Burger*, 482 U.S. 691, 699 (1987) ("An owner or operator of a business ... has an expectation of privacy in commercial property, which society is prepared to consider to be reasonable."); *United States v. Nagle*, 803 F.3d 167, 178 (3d Cir. 2015) (holding that to establish standing to challenge search of corporate premises, "Nagle must show a personal connection to the place searched or to the item seized and that he attempted to keep the place and item private."); *United States v. Gonzalez*, 412 F.3d 1102, 1117 (9th Cir. 2005) (holding that directors of small, family-run business had standing to challenge wiretap in one of company's buildings because defendants were corporate officers and directors who had ownership interest and exercised full access to the building as well as managerial control over its day-to-day operations).

what repairs are necessary – for that they have to turn to the FAA regulations, which incorporate the manufacturers' manuals, which Repair Stations are legally required to follow.  SA McGrade – as an experienced FAA investigator – knew or should have known of this requirement and knowingly misled the Magistrate Judge.  If SA McGrade is to explain his omission, he should be required to do so under oath and be subjected to cross-examination.

Finally, the government argues in its opposition that there is probable cause even if the Court were to excise the alleged false statements.  That alternative argument, however, runs contrary to the government's entire theory of the case, specifically, the Indictment is premised upon the allegation that Repair Stations rely on the trace paperwork they receive from parts brokers, like Defendant Vaisman, making Vaisman's alleged lies material and a deprivation of property.  Without that allegation, the government's case falls.  This is exactly what Defendant argued at page 42 of his motion to dismiss brief, yet the government offers no response and simply asserts, but does not explain how, there would be probable cause if the false statements are excised.

At best, the government's opposition gives rise to disputed issues of fact regarding the government's seizure of evidence in this case.  Therefore, the Court should hold an evidentiary hearing on Defendant Vaisman's motion to suppress at which both SA McGrade, the government's informant, and the FAA personnel who took part in the search are subjected to cross-examination.

## VI.     THE COURT SHOULD GRANT A BILL OF PARTICULARS TO CLARIFY CERTAIN VAGUE ALLEGATIONS IN THE INDICTMENT.

Defendant Vaisman has moved for a bill of particulars, which the government has opposed, including Defendant's request for an itemization of the specific parts that the government claims were involved in sham transactions or were the subject of false certifications.  The government responds simply that there is enough information in the Indictment.

There is a great deal of information in the Indictment but notably absent is a list of the parts that the government will attempt to prove at trial were included in sham transactions or about which Defendant Vaisman is alleged to have made a false statement.   Remarkably, the government's only substantive response is that "it is unnecessary and would be extremely unfair to compel the government to commit itself to facts of the most specific and arguably trivial details before it is in a position to do so," Gov't Br. at 52 (internal quotation marks omitted), but if the government does not know now – now over eight years after it commenced its investigation – which airplane parts are at issue (including, for example, the part that the government now alleges in its brief caused an in-flight engine shutdown), then how in the world is Defendant Vaisman supposed to know?

The purpose of a bill of particulars is so that a defendant does not have to guess at what it is he is alleged to have done wrong, *see United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988) (reversing conviction where government failed to provide defendant prior to trial with particulars of specific companies he was charged in indictment with having extorted); it certainly is not asking too much for the government to identify the parts that are at the core of its fraud counts.   Therefore, for the reasons set forth in Defendant Vaisman's moving brief and in this reply brief, the Court should direct the government to provide all of the requested bills of particulars.

## <u>CONCLUSION</u>

For these reasons, the Court should enter an order dismissing the Indictment and/or granting the other relief requested above.

Respectfully submitted,

_____
Mark A. Berman, Esq.
Jeremy B. Stein, Esq.
**HARTMANN DOHERTY ROSA**
**BERMAN & BULBULIA, LLC**
65 Route 4 East
River Edge, NJ 07661
(201) 441-9056
mberman@hdrbb.com

*Attorneys for Defendant*
*Gideon Vaisman*

Dated: February 21, 2017